*Cleland v. Thorp.*

---

## OCTOBER TERM, 1798.

### PHILIP CLELAND v. JAMES THORP.

*In Chancery.*

This was an appeal from a decree of the court of quarter sessions of Washington county.

James Thorp, on the 28th day of March, in the year 1783, made the following entry on treasury warrant with the county surveyor of Jefferson county, to-wit:

"James Thorp enters 1,780 acres, upon treasury warrant, No. 14,037, to join the above (Othey Thorp's) on the west, beginning at his north-west corner and running with the same south and west for quantity."

And having caused the same to be surveyed in the manner described on the connected plat, obtained a grant for the same.

Philip Cleland, on the 7th day of August, in the year 1783, entered with the surveyor of Jefferson county 1,000 acres of land, on a treasury warrant, in the following words, to-wit:

"Philip Cleland enters 1,000 acres upon a treasury warrant, No. 3,954, on the head of Lick creek, adjoining the above entry. Matthew Patton's 350 acres on the south, and Cuthbert Bullitt on the west, beginning at three poplars and a black oak, south-west corner, to said Bullitt's survey of 1,000 acres, and running north with his line to the north-west corner; then west to Swan's south-east corner; thence south, 383 poles; thence east to the beginning."

And having caused the same to be surveyed in the manner described on the connected plat, obtained a grant of earlier date than that obtained by the appellee. The suit was brought by the appellee in the inferior court to obtain a conveyance from the appellant of the interference.

Cleland *v.* Thorp.

The annexed connected plat, No. 31, was returned in this cause, of which the following is an explanation:

1 2 3 4, James Thorp's 1,780 acres, according to survey. 2 3 5 6, Othey Thorp's 1,000 acres, ditto. 5 6 7 8, Wm. Thorp's 1,000 acres ditto. 7 10 11 12 13 14 15 16 17 18 19, William Irvine's 2,578 acres according to survey. 17 18 19 20, Isham Prewitt's 400 acres according to survey. 20 21 22 23, Matthew Walton's 1,000 acres according to survey, as assignee of Caleb Wallace. 22 23 24 25, James Newell, assignee of James Clarke, 1,000 acres according to survey. 20 16 26 7, Irvine and Prewitt's, forming a square. A B C D, Matthew Patton's 350 acres according to survey. C D E F, Philip Cleland's 1,000 acres according to survey.

The following entries were read in evidence, viz.:

"March 28, 1783. Othey Thorp enters 1,000 acres upon a treasury warrant, No. 14,038, on the waters of the Beech fork and the Rolling fork, beginning at the north-west corner of the above entry, running with the same south and west for quantity."

"March 28, 1783. William Thorp enters 1,000 acres upon a treasury warrant, No. 14,039, on the waters of the Beech fork, beginning at William Irvine's north-west corner, and to run with his line south 600 poles, and westwardly for quantity."

"March 28, 1783. William Irvine, Jr., enters 2,578 acres upon a treasury warrant, No. 11,136, on the waters of the Beech fork, beginning at Isham Prewitt's north-west corner of his 400 acre entry, on Wallace's line, running with Prewitt's line to the county line south, and with Wallace's line and Clarke's line out westwardly for quantity."

"March 28, 1783. Isham Prewitt enters 400 acres upon a treas-

ury warrant, No. 8,588, on the waters of the Beech fork, beginning on the county line, at Caleb Wallace's south corner, and to extend with the said Wallace's line and the county line for quantity."

"March 28, 1783. Caleb Wallace enters 1,000 acres upon a treasury warrant, No. 10,006, on the head waters of the Beech fork, beginning where the county line first strikes the main Beech fork from the north, running with the said county line south 400 poles, and westward for quantity."

"March 28, 1783. James Clarke enters 1,000 acres upon two treasury warrants, 500 No. 13,160, and 500 No. 13,155, on the waters of the creek, and joining Caleb Wallace's 1,000 acre entry on the west side, beginning at the north-west corner, running with his south line 400 poles, and westwardly and down the creek for quantity."

The decree of the inferior court was in favor of James Thorp, the present appellee, from which an appeal was taken, and the cause came on to be argued at this term. It was stated by the surveyor, in his report, that the defendant admitted Walton's survey to be properly made; and it was admitted at the argument that both Walton, assignee of Wallace, and Newell, assignee of Clarke, had surveyed according to entry.

By the Court.—It appearing that James Thorp's entry with the surveyor was made prior to the entry of Philip Cleland, the first and principal thing to be determined is the situation of the said James Thorp's entry, or in other words where and how a survey thereon ought to be made. To do this it is also necessary to ascertain the situation of the entries on which it depends, and how surveys ought to have been made on them.

It is admitted by the parties and their counsel, and appears from the surveyor's report exhibited in this cause, that Wallace and Clarke's entries are properly surveyed; and if so, it seems to the court that Prewitt's entry also is properly surveyed. The situation of the three last named entries being thus fixed, it is the opinion of this court that Irvine's survey (agreeably to his entry) should have been so made as to adjoin the county line and Wallace and Clarke's lines, so as, together with Prewitt's survey to form a square; that William Thorp's survey (agreeably to his entry) should have begun at the north-west corner of Irvine's survey, when made as aforesaid, and extend south 600 poles, and then west so far as to include the quantity it calls for; and that Othey

Thorp's survey (agreeably to his entry) should have began at the north-west corner of William Thorp's survey, when made as aforesaid, and extend south and west so as to include in a square the quantity it calls for, and then it is the opinion of this court that James Thorp's survey (to be made agreeably to his entry) should have began at the north-west corner of the said Othey Thorp's survey, when made as aforesaid, and have extended south and west so as to include in a square the quantity it calls for.

It being evident from an inspection of the said surveyor's report that the survey of the said James Thorp, when made as aforesaid, will not include precisely the same land that has been decreed to him by the said court of quarter sessions. It is therefore decreed and ordered that the decree of the said court of quarter sessions be reversed, annulled, and set aside; and this court now proceeding to make such decree as the said court of quarter sessions should have pronounced herein: It is decreed and ordered that the said James Thorp do recover from the said Philip Cleland all that part of his survey which shall be found to be included within the said James Thorp's survey, when made conformably to the foregoing opinion relative thereto, and also within the survey on which he has obtained a patent. Order of survey, and costs divided.